# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **RICKY JOE GENNOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:19-cv-00478 |
| ) | Judge Trauger |
| **RUSSELL WASHBURN, Warden, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Ricky Joe Gennoe, is a state inmate who was formerly incarcerated at the Trousdale Turner Correctional Complex in Hartsville, Tennessee. Proceeding *pro se*, the plaintiff filed a complaint under 42 U.S.C. § 1983 (Doc. No. 1), a motion to appoint counsel (Doc. No. 2), and an application for leave to proceed *in forma pauperis* (IFP). (Doc. No. 1 at 12–14; Doc. No. 1-2.) Shortly after receiving these filings, the court received an amended complaint (Doc. No. 6) and a notice from the plaintiff that he had been transferred to the Whiteville Correctional Facility in Whiteville, Tennessee. (Doc. No. 7.)

The case is before the court for a ruling on the IFP application and for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. Application to Proceed IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Because it is apparent from the plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application will be granted by separate order.

## II. Initial Review of the Complaint

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, 28 U.S.C. § 1915A provides that the court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the court must view the complaint in the light most favorable to the plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, *pro se* pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the court "create a claim

which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, the plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

In his amended complaint,[1] the plaintiff alleges that in the early morning hours of February 5, 2019, he was sexually assaulted by his cellmate after having been drugged by him the night before. (Doc. No. 1 at 1.) At around 8:00 a.m., the plaintiff stopped Sergeant Scottie Roach at his cell door and slid him a note, in which the plaintiff revealed that he had been sexually assaulted hours earlier and needed Roach to either bring him a phone to report the assault to the Prison Rape Elimination Act (PREA) coordinator, or report the assault to PREA himself. (*Id.* at 3.) Sergeant Roach smiled and walked away, leaving the plaintiff housed in the same cell. (*Id.*)

Around midday on February 5th, the plaintiff again saw Sergeant Roach and asked if he had addressed the issue raised in the note. Sergeant Roach responded that it was not his problem

---

[1] The plaintiff was entitled to amend his complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1).

3

and made an obscene gesture toward the plaintiff before leaving him in the same cell, still housed with his assailant. (*Id.*) The plaintiff subsequently filed a grievance over the matter. (*Id.*)

On February 6th, the plaintiff stopped mental health counselor Reed at his cell door and asked to be pulled from his cell for an urgent consultation. (*Id.* at 4.) Counselor Reed could not arrange a consultation until February 8th.

On February 8th, the plaintiff told Counselor Reed about the sexual assault and asked him to contact PREA. (*Id.*) Counselor Reed then contacted the PREA coordinator, Pickett, and reported the assault on the plaintiff. (*Id.* at 5.) Pickett instructed Reed that the plaintiff was to be escorted by Sergeant Roach to medical to be examined. (*Id.*) Pursuant to the plaintiff's instructions, Reed told Pickett that Sergeant Roach had refused to report the sexual assault. (*Id.*) When advised that the plaintiff needed to be escorted to medical, Roach refused to provide the escort, and instead contacted Captain Joe Garland. (*Id.* at 6.)

Ten minutes later, Captain Garland arrived at the area where the plaintiff was waiting to be escorted to medical. (*Id.*) Garland was cursing and screaming, asking who was attempting to file a PREA. (*Id.*) When told by Counselor Reed that it was the plaintiff who wanted to file a PREA complaint, Garland took the plaintiff into Reed's office and shut the door. (*Id.* at 6–7.) Garland proceeded to threaten the plaintiff and accuse him of lying. (*Id.* at 7.) The plaintiff informed Garland that he needed to be seen by medical because he was bleeding from his rectum and having "serious problems urinating." (*Id.*) Garland informed the plaintiff that he was not going to be escorted to medical, and that no PREA complaint would be filed for him. (*Id.* at 7–8.) Garland again accused the plaintiff of lying and told him that because he had eaten food and used the restroom since the alleged assault, he could not be examined by medical. (*Id.* at 8.) Garland

4

instructed the pod officers to move the plaintiff out of the cell with his assailant, and into a cell that was downstairs in the same pod. (*Id.* at 8.)

On February 11th, the plaintiff stopped Warden Russell Washburn at his cell door and advised him of the assault and the fact that Roach and Garland had refused to report the assault to PREA or have the plaintiff examined by medical. (*Id.*) The plaintiff also advised Warden Washburn that he had been reassigned to a cell just downstairs from his assailant, and that his assailant would yell obscene threats and offer to pay other inmates to "pop their doors open and get [the plaintiff]." (*Id.* at 9.) Warden Washburn took out his cellphone and took a picture of the plaintiff's face sheet by his cell door, then assured the plaintiff that he would look into the matter. (*Id.*) The next day, on February 12th, the plaintiff filed a grievance over the issues with Roach and Garland. (*Id.*)

On February 13th, the plaintiff stopped Tennessee Department of Correction Monitor Chris Brunn at his cell door and advised him of the whole ordeal, including the refusal of a medical examination and a PREA report. (*Id.*) Brunn assured the plaintiff that he would look into the matter. (*Id.*)

On February 14th, the plaintiff filled out a sick call request for mental health, due to thoughts he had been having since the sexual assault. (*Id.*) On March 7th, having not yet been seen for a medical or mental health examination, the plaintiff filled out a second sick call request for mental health care. (*Id.* at 10.) On March 21st, the plaintiff had not been seen for treatment, and asked Counselor Reed to get him an appointment. (*Id.*) Reed said that he would let Dr. Scott Schuch know that the plaintiff needed to be seen. (*Id.*)

On March 30th, having still not been seen and now being housed in the cell next door to his assailant's, the plaintiff attempted suicide by eating razor blades. (*Id.*) His cellmate reported

this to an officer, who called the nurse to the plaintiff's cell. (*Id.*) The nurse simply told the plaintiff that the charge nurse would be coming to speak with him, but no one ever did. (*Id.*)

On April 11th, the plaintiff stopped Assistant Warden Yolanda Pittman at the door of his new cell and spoke to her "about the rape and everyone's refusal to report it, or to have [him] properly screened by medical." (*Id.* at 11.) Pittman assured the plaintiff that she had no prior knowledge of the incident but that she would look into it. (*Id.*) The plaintiff told Pittman that she had signed the grievances he had filed over these issues, and Pittman walked off. (*Id.*)

On April 16th, the plaintiff was seen by medical for chronic care and informed the doctor of his suicide attempt. (*Id.*) The doctor ordered an x-ray and referred the plaintiff to mental health. (*Id.*) On that same day, Pickett, the PREA coordinator, came to his cell door to ask if he needed to be seen by a mental health doctor, and the plaintiff responded affirmatively. (*Id.* at 12.) However, he was not seen by mental health. (*Id.*)

On April 24th, after being reassigned by Scottie Roach to a cell directly downstairs from his assailant's cell, the plaintiff was being verbally harassed by his assailant through the vents and asked an officer to bring him a phone so he could report the sexual harassment to PREA. (*Id.*) However, when the officer reported this request to her supervisor, Captain Garland, the request was denied by Garland. (*Id.* at 12–13.) When the officer told this to the plaintiff the following day, he filed a grievance. (*Id.* at 13.)

On May 3rd, the plaintiff stopped Counselor Reed at his cell door and asked why he had not been seen by mental health. (*Id.*) Reed responded that he had told Dr. Schuch about the plaintiff's need to be seen, but that the plaintiff did not want to know what Dr. Schuch had said about him. (*Id.*)

6

The plaintiff alleges that he has asked all named defendants to help him put an "incompatible" on his assailant and to place him in protective custody "due to death threats made by gang members who had been paid by the aggressor's friend." (*Id.* at 14.) He alleges that his request to be transferred to another facility for safety reasons was denied and that he was not ever seen for mental health care, was still housed directly below his assailant in segregation, was still enduring sexual harassment and death threats from his assailant, and was given "bogus disciplinary infractions for refusing cell assignments every 20 days." (*Id.*)

The plaintiff sues defendants Washburn, Pittman, Garland, Roach, Brunn, Schuch, Reed, and Pickett in their individual and official capacities, seeking unspecified damages for violations of his rights under the Eighth and Fourteenth Amendments and under PREA. (*Id.* at 15.) He claims that his rights were violated "by refusal of medical, and mental health treatment, and by . . . all defendants . . . violating . . . federal PREA laws and guidelines by reusing to report and have the sexual assault investigated properly." (*Id.*)

**D. Analysis**

**1. Eighth Amendment Claim**

This action concerns the defendants' failure to respond to the plaintiff's needs in the wake of a sexual assault by his cellmate. It does not appear to charge any defendant with failure to protect the plaintiff from the assault itself. Nowhere in the complaint is it alleged that any defendant had reason to know that the plaintiff would be assaulted, or that the plaintiff himself had reason to anticipate the assault. Accordingly, no plausible Eighth Amendment claim of failure to protect the plaintiff is stated here. *See Curtis v. Hardin*, No. 5:17CV-P85-TBR, 2017 WL 2682282, at *6 (W.D. Ky. June 21, 2017) (finding no failure-to-protect claim stated in prison rape case because

7

"[n]othing in the complaint demonstrates that the assault was anything but an unexpected incident or gives any other indication that Defendants knew of and disregarded a risk of harm to Plaintiff").

The plaintiff alleges that defendants refused to provide needed medical and mental health treatment after he was assaulted and after he attempted to commit suicide. "Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution." *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 105 (1976)) (internal quotation marks omitted). "For this reason, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* (internal quotation marks omitted). In order to succeed in bringing a deliberate indifference claim in the medical context, the plaintiff must allege the deprivation of a "sufficiently serious" medical need by a defendant who acted with a "sufficiently culpable state of mind." *Id.* at 367–68 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The plaintiff alleges that his complaints of rectal bleeding, urinary difficulties, and mental distress were ignored, or that treatment was refused, in the days, weeks, and months following his rape by another inmate. These allegations are sufficient to allege deliberate indifference to serious medical needs in violation of the Eighth Amendment. *Doe v. City of San Mateo*, No. C-07-05596-SI, 2011 WL 500203, at *4 (N.D. Cal. Feb. 9, 2011) ("Failure to provide medical treatment to a rape victim who is in custody, including failure to provide needed psychiatric care, if done with deliberate indifference, can be a constitutional violation.") (citing *Nelson v. Shuffman*, 603 F.3d 439, 448–49 (8th Cir. 2010)); *R.B. v. Hollibaugh*, No. 1:16-CV-01075, 2017 WL 663735, at *12 (M.D. Pa. Feb. 1, 2017), *report and recommendation adopted*, No. 1:16-CV-1075, 2017 WL 661577 (M.D. Pa. Feb. 17, 2017) (request for medical attention nine days after prison rape, while

plaintiff "was still bleeding and in pain," established prison guard's knowledge of serious medical need); *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006) (holding that Constitution protects against deliberate indifference to serious mental health needs) (citing, *e.g.*, *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see Darrah*, 865 F.3d at 368 ("Our precedents make it clear that neglecting a prisoner's known medical needs may constitute deliberate indifference. Even relatively short periods of delay or neglect have sufficed."). This Eighth Amendment claim will be allowed to proceed against defendants Roach, Garland, Reed, Schuch, Pickett, and Brunn, who are alleged to have directly or indirectly delayed or obstructed the plaintiff's access to appropriate treatment, even if only by receiving his request for treatment, indicating they would look into the matter, and then failing to do so. *See Brown v. Hughes*, 894 F.2d 1533, 1539 (11th Cir. 1990) (finding factual issue of deliberate indifference where prison guard allegedly "promised to send someone to look at" prisoner's significant foot injury, "but never did").

Moreover, presuming the truth of the plaintiff's allegations concerning his conversations with Warden Washburn and Assistant Warden Pittman, these allegations are sufficient at this point to support a colorable claim of supervisory liability under Section 1983, on the premise that Washburn and Pittman were told of the plaintiff's need for medical and mental health care and "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of . . . subordinate[s]" withholding such care. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 511 (6th Cir. 1996).

This denial of medical care claim will be allowed to proceed against these defendants in their individual capacity only. Claims against individual defendants in their official capacity are equivalent to claims against their employers. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (holding that "individuals sued in their official capacities stand in the shoes of the entity they

9

represent"); *Galloway v. Swanson*, No. 5:09CV02834, 2012 WL 646074, at *8 (N.D. Ohio Feb. 28, 2012), *aff'd sub nom. Galloway v. Anuszkiewicz*, 518 F. App'x 330 (6th Cir. 2013) ("An official capacity claim against an employee of a private corporation is viewed as a claim against the corporate entity itself."). Defendants Roach, Garland, Reed, Schuch, Pickett, Washburn, and Pittman appear to be employees of Core Civic (*see* Doc. No. 1 at 2–4), a private corporation that performs the traditional state function of operating a prison. *Christy v. Lindamood*, No. 1:18-cv-00008, 2018 WL 1907447, at *3 (M.D. Tenn. Apr. 23, 2018) (quoting *Thomas v. Coble*, 55 F. App'x 748 (6th Cir. 2003)). Because the complaint does not contain allegations indicating that medical care was delayed or denied pursuant to any Core Civic custom or policy, it fails to state a claim against these defendants in their official capacity. *Willard v. Leibach*, No. 3:19-cv-00823, 2019 WL 4736936, at *3 (M.D. Tenn. Sept. 27, 2019) (citing *Thomas*, 55 F. App'x at 749).

Defendant Brunn appears to be employed by a state agency, the Tennessee Department of Correction. (*See* Doc. No. 1 at 2.) An official capacity claim against Brunn is thus equivalent to a claim against the state, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); the Eleventh Amendment therefore applies to bar the claim for monetary damages against this state employee in his official capacity. *Id.* at 169. Additionally, a state employee sued in his official capacity is not a "person" subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the complaint fails to state a claim against defendant Brunn in his official capacity.

**2. Harassment Claims**

The plaintiff also asserts that his rights under "PREA laws and guidelines" have been violated by the defendants' refusal to investigate the sexual assault properly and that his Fourteenth Amendment rights were violated "while being kept in segregation" and subjected to "sexual or

physical assault and or harassment (PREA)." (Doc. No. 6 at 15.) However, violations of PREA cannot be redressed through a private suit under Section 1983:

> "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). Numerous Courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners. *See*, *e.g.*, *Hill v. Hickman County Jail*, 2015 WL 5009301 (M.D. Tenn. August 21, 2015); *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act."); *Faz v. N. Kern State Prison*, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he PREA does not create a private right of action ...."); *Woodstock v. Golder*, 2011 WL 1060566, at *9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right of action.") (citation omitted). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.... The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008).

*Peterson v. Burris*, No. 14-cv-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016).

Nor is any viable claim stated by the plaintiff's allegation that he was subjected to verbal harassment while being housed in segregation directly below his assailant's upper-level cell (Doc. No. 6 at 12, 14–15), or that he was verbally harassed and threatened by defendant Garland. (*Id.* at 7.) "Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir.1987)). Likewise, such harassment or threats from a fellow inmate are necessarily insufficient to support any constitutional claim. See *Land v. Henderson*, No. H-15-2607, 2018 WL 3059670, at *6 & n.38 (S.D. Tex. June 20, 2018).

### 3. Retaliation Claim

The plaintiff alleges that, after defendant Roach left him in a cell with his assailant on the day of the assault, he filed a grievance against Roach. He further alleges that, after the PREA coordinator was contacted and a report of sexual assault was made, defendant Garland reacted angrily over the report to the PREA coordinator and refused to allow the plaintiff to go to the medical clinic. Garland and Roach thereafter assigned the plaintiff to housing either directly below or directly beside his assailant, where he was subject to the assailant's continuing verbal threats and abuse. (Doc. No. 6 at 8–9, 12.) Another grievance was filed over these issues with Roach and Garland. (*Id.* at 9.) The plaintiff alleges that defendant Garland denied his request to contact PREA concerning his assailant's ongoing verbal harassment and threats and that he filed a grievance about the matter. (*Id.* at 12–13.) Additionally, he alleges "retaliation by staff members" following his filing of internal grievances and external complaints with various government offices and officials, including by being subjected to "bogus disciplinary infractions for refusing cell assignments every 20 days." (Doc. No. 6 at 14.) The plaintiff does not identify the staff members who charged him with "bogus disciplinary infractions."

At this initial stage, the allegations against defendants Garland and Roach are sufficient to state a colorable claim of retaliation under the First Amendment. "To establish such a claim, a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir.1999) (en banc)) (internal quotation marks omitted). The filing of a non-frivolous grievance is protected conduct, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.

2000), and for purposes of this initial review, the court assumes that initiating a PREA report and investigation is likewise protected conduct. *See McKinney v. Napier*, No. 3:17-cv-P28-DJH, 2017 WL 2295905, at *6 (W.D. Ky. May 25, 2017). The court also finds that being moved to a cell directly beneath or beside one's alleged rapist in the wake of the report, and being refused further access to the PREA coordinator, constitutes sufficiently adverse action with sufficient connection to the protected conduct for this claim to survive initial screening.

### III. Motion to Appoint Counsel

The plaintiff has filed a motion to appoint counsel to represent him in this matter. (Doc. No. 2.) An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Rather, the appointment of counsel is a "privilege justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (citations omitted). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court. *Id.* at 604. In making the determination of whether the circumstances warrant the appointment of counsel, courts are to consider the type of case presented and the abilities of the plaintiff to represent himself. *Id.* at 606 (citations omitted). Evaluation of these factors in turn "generally involves a determination of the complexity of the factual and legal issues involved." *Id.* (internal quotation marks and citation omitted).

The court will reserve ruling on this motion at this time. After process is served and the defendants respond to the complaint, the Magistrate Judge will be better positioned to consider whether appointment of counsel is warranted due to what initially appears to be a serious claim of deliberate indifference to medical and mental health needs.

**IV.	Conclusion**

In light of the foregoing, the plaintiff's application to proceed IFP will be granted and the filing fee will be assessed by separate order. The plaintiff's claim of deliberate indifference to serious medical needs under the Eighth Amendment will be allowed to proceed against defendants Roach, Garland, Reed, Schuch, Pickett, Brunn, Washburn, and Pittman. His claim of retaliation under the First Amendment will be allowed to proceed against defendants Garland and Roach. His claims of verbal harassment and deprivation of rights under the PREA will be dismissed. The court will reserve ruling on the plaintiff's motion to appoint counsel.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge